Kenneth D. CHAVIN and Jeffrey M. Chavin, Plaintiffs Below, Appellants,

v.

PNC BANK, Delaware, a Delaware corporation, as Trustee of the Florence Chavin Trust u/a/d 9/12/91, as amended, and as Administrator of the Estate of Leslie Sanford Chavin and Harlan Miller, Defendants Below, Appellees.

No. 175,2002.

Supreme Court of Delaware.

Submitted: Oct. 15, 2002.

Decided: Jan. 14, 2003.

Reargument and Rehearing En Banc Denied Feb. 21, 2003.

Peter S. Gordon, Grover C. Brown (argued), Robert A. Penza, and Peter M.

Sweeney, of Gordon, Fournaris & Mammarella, P.A., Wilmington, for Appellants.

David J. Ferry (argued) and Rick S. Miller, of Ferry, Joseph & Pearce, P.A., Wilmington, for Appellee PNC Bank, Delaware, and Thomas Herlihy, III, and James F. Harker, of Herlihy, Harker & Kavanaugh, Wilmington, for Appellee Harlan Miller.

Before HOLLAND, BERGER and STEELE, Justices.

BERGER, Justice:

In this appeal, we consider the meaning of certain trust language. The disputed provision states that, upon the death of the settlor, the trustee shall transfer the remaining trust assets to the settlor's son, "if he shall *then* be living." The sole issue on appeal is whether "then" refers to the date of the settlor's death or the date on which the trustee distributes the trust assets. We hold that, to give effect to the intent of the settlor, the trust must be construed to mean that the son had to be alive at the time of distribution in order to take under the trust. Accordingly, we reverse.

### Background Facts and Trial Court Decision

Florence Chavin and her husband had two sons, I. Favel and Leslie. Favel, also had two sons, Kenneth and Jeffrey. As part of their estate plan, Florence and her husband created revocable trusts. In 1998, after both her husband and Favel had died, Florence revised her trust and executed a new will, which together divided Florence's estate roughly evenly between Leslie and the two grandchildren, free of any trust. In addition, Florence made testamentary gifts totaling $9,500 to ten people, including a $1,000 gift to Harlan Miller, her husband's great nephew.

Florence died on May 7, 1999, leaving an estate valued at approximately $2 million. Her son, Leslie, who was a long time resident of Brazil, was murdered in Rio de Janeiro on August 21, 1999. Leslie, who was unmarried and had no children, left his estate to Harlan. PNC Bank, Delaware, is the administrator of Leslie's estate, the executor of Florence's estate, and the trustee of her trust.

Kenneth and Jeffrey filed this declaratory judgment action against PNC Bank and Harlan seeking a determination that they are the residuary beneficiaries of the trust. The trust provides, in relevant part:

ITEM XIII.

\* \* \*

Section 4. ... [U]pon the death of Settlor, Trustee shall pay over, transfer and convey whatever remains of the trust estate, discharged of the trust, to Settlor's son, LESLIE S. CHAVIN, if he shall then be living. If Settlor's son shall then be deceased, to Settlor's then living issue, per stirpes.

The grandchildren contend that the phrase "if he shall then be living" refers to the time when the trustee pays over the trust estate to the beneficiary. PNC Bank and Harlan argue that the phrase refers to the Settlor's date of death.

John M. Amalfitano, Esq., the attorney at PNC Bank who drafted the revised trust, provided the only evidence of Florence's dispositive intent. In his deposition, Amalfitano recalled that the most significant issue for Florence was whether she would continue to retain the assets in trust or give the assets to the beneficiaries outright. Leslie, who was visiting his mother and met with Amalfitano, told them both that he would prefer to receive the assets free of the trust, and Florence ultimately honored that preference.

Amalfitano did not discuss with Florence the possibility that Leslie might survive her, but die before receiving the trust assets. He did acknowledge, however, that

Leslie and the two grandsons were the only three beneficiaries that were "in the picture." Amalfitano also stated his belief, based on the discussions he had with Florence, that she would have given more of her estate to her grandsons if she had known that Leslie would die when he did.

The Court of Chancery found that the phrase "if he shall then be living" refers to the date of the settlor's death. The court viewed this as the most plausible construction because it refers to a date certain and because it results in early vesting of the estate. In addition, the trial court found its construction to be consistent with Florence's intent. The court apparently concluded that, because Florence decided to terminate her trust upon her death, she did not intend the estate assets to stay within the immediate family.

### Discussion

■ The Court of Chancery correctly and succinctly stated the controlling legal principles:

The cardinal rule of law in a trust case is that the intent of the settlor controls the interpretation of the instrument. "Such intent must be determined 'by considering the language of the trust instrument, read as an entirety, in light of the circumstances surrounding its creation.'" All other rules of construction must be subordinate to determining [the] settlor's intent, their value being as aids in ascertaining that intent as precisely as possible.[1]

It appears that the trial court also correctly found that the phrase "if he shall then be living" is ambiguous as applied to the facts of this case, since that phrase is reasonably susceptible of two interpretations.[2] Thus, the question is, which interpretation will give effect to the intent of the settlor? On this point, we differ with the trial court.

■ The trust, by its terms, reveals Florence's intent to benefit her immediate family. It provides that certain distant relatives, like Harlan, are to receive $1,000, whereas Florence's son is to receive approximately $1 million. It also provides that, if Leslie does not take under the trust, Florence's grandsons are to receive the $1 million. Amalfitano confirmed what is apparent from this dispositive scheme—that Leslie and the two grandsons were the only beneficiaries he discussed with Florence and that she intended to give them the vast bulk of her estate.

Unfortunately, Amalfitano never discussed the possibility that Leslie might die so soon after Florence that Leslie would never receive any distribution from the trust. Even without such a conversation, however, Amalfitano believed that Florence would have wanted more of her estate to pass to her surviving grandsons, as events transpired. Amalfitano's belief was based on his discussions with Florence over several years, and seems unassailable as a matter of common sense. Florence gave virtually her entire estate to her immediate family and there is nothing in the trust or the record to suggest that she intended to change that dispositive plan in these unforeseen circumstances.

We conclude, therefore, that Florence's grandsons take under Item XIII, Section 4 of the trust. In reaching this conclusion, we are not unmindful of the fact that Florence decided to distribute her assets free of the trust—a fact that the trial court found important in reaching a contrary result. We do not think that Florence's

---

1. *Chavin v. PNC Bank, Delaware*, 2002 WL 385543 at *2 (Del.Ch.)(quoting *Annan v. Wilmington Trust Co.*, 559 A.2d 1289, 1292 (Del.1989))(Internal citations omitted.).

2. *Woodward v. Farm Family Casualty Ins. Co.*, 796 A.2d 638 (Del.2002).

decision to terminate the trust has any bearing on her overall intent to benefit her immediate family. Florence wanted her estate to pass to her son and grandsons, and she wanted her estate to be distributed free of the trust. Those two intentions are not contradictory and the conclusion we reach gives effect to both.

### Conclusion

Based on the foregoing, the decision of the Court of Chancery is REVERSED and this matter is remanded for further action in accordance with this decision. Jurisdiction is not retained.