Kenneth D. CHAVIN and Jeffrey M. Chavin, Plaintiffs Below, Appellants/Cross–Appellees,

v.

PNC BANK, DELAWARE, a Delaware Corporation, as Trustee of the Florence Chavin Trust u/a/d 9/12/91, as amended, and as Administrator of the Estate of Leslie Sanford Chavin, Defendant Below, Appellee/Cross–Appellant.

No. 359, 2004.

Supreme Court of Delaware.

Submitted: March 30, 2005.

Decided: April 28, 2005.

Grover C. Brown, Esquire (argued), Peter S. Gordon, Esquire, and Robert A. Penza, Esquire, of Gordon, Fournaris & Mammarella, P.A., Wilmington, Delaware, for Appellants/Cross–Appellees.

David J. Ferry, Jr., Esquire, and Rick S. Miller, Esquire (argued), of Ferry, Joseph & Pearce, P.A., Wilmington, Delaware, for Appellee/Cross–Appellant.

Before HOLLAND, BERGER and RIDGELY, Justices.

BERGER, Justice.

In this appeal, we address the aftermath of a decision holding that Florence Chavin's two grandchildren are the residuary beneficiaries of her trust. The trustee of that trust had concluded that the estate of Leslie Chavin was the residuary beneficiary. Based on that mistaken assumption, the trustee incurred substantial administrative expenses in its capacity as administrator of Leslie Chavin's estate, and distributed the assets of Leslie Chavin's estate without retaining funds to pay those expenses. As a result, the trustee sought, and the trial court awarded, more than $100,000 in Leslie Chavin estate expenses to be paid from the Florence Chavin trust. We conclude that the trial court abused its discretion by, in essence, requiring the trust to bear the cost of the trustee's good faith mistake.

## Factual and Procedural Background

In its earlier decision, this Court held that Kenneth and Jeffrey Chavin, the grandsons of decedent, Florence Chavin, are the residuary beneficiaries of the Florence Chavin Trust, which was worth approximately $1 million at the time of Florence's death.[1] PNC Bank, Delaware, the trustee, believed that Leslie Chavin's estate was the residuary beneficiary. Leslie, who was Florence's son, lived in Brazil and died shortly after Florence. Leslie's estate passed to Harlan Miller, Florence's husband's great nephew.

Leslie's estate consisted of approximately $80,000 in Swiss bank accounts and the Delaware home Leslie inherited from his mother. PNC opened an ancillary estate for Leslie in Delaware and promptly transferred $720,000 of trust assets to itself, as administrator of Leslie's estate. PNC then retained the Wilmington law firm of Cooch & Taylor (C & T) to advise it with respect to Brazilian law, and a Brazilian lawyer, Lila Zacharias. Miller apparently had no interest in keeping the Delaware property, so PNC sold it and distributed the $152,890 in net proceeds to Miller. The grandsons agreed to the distribution to Miller, but, when they did so, they were unaware of the expenses PNC had been incurring as part of its administration of Leslie's estate.

After this Court held that the grandsons are the residuary beneficiaries of Florence's trust, litigation continued in the trial court for more than one year. For the first nine months, Miller filed a variety of motions seeking reconsideration or reversal of this Court's decision. Then, in December 2003, PNC filed an application for fees and expenses in its capacity as trustee of Florence's trust. In January, 2004, PNC filed another application for fees and

---

1. *Chavin v. PNC Bank, Delaware,* 816 A.2d 781 (Del.2003).

expenses, this time in its capacity as ancillary administrator of Leslie's estate. Finally, in May 2004, PNC filed a supplemental application for fees and expenses in its capacity as trustee. The grandsons responded by objecting to almost all of the amounts requested. In addition, the grandsons filed a motion for surcharge against PNC. After hearing testimony and considering briefs and arguments, the trial court granted PNC's requests and denied the grandsons' motion for surcharge. This appeal followed.

### Discussion

■ There is no dispute about the fact that PNC was authorized to incur expenses, including attorneys' fees, both in its capacity as trustee of the Florence Chavin Trust and as administrator of Leslie's estate.[2] In addition, it is settled law that "trustees who defend litigation against the trust are entitled to look to the trust for reimbursement of that expense," even if they are unsuccessful in their efforts.[3] Finally, the decision to award attorneys' fees and expenses, and the determination of what constitutes a reasonable amount, lies within the sound discretion of the trial court.[4] Thus, this Court will not reverse unless the decision of the trial court was arbitrary, capricious or clearly wrong.[5]

The expenditures at issue, in PNC's fee applications and in the grandsons' motion to surcharge the trustee, fall into three categories:

i) attorneys' fees paid to the firm of Ferry, Joseph & Pearce (FJ & P) for defending PNC in the action brought by the grandsons to determine the residuary beneficiaries of the trust; ii) attorneys' fees paid to C & T and to Zacharias for services rendered in connection with Leslie's estate; and iii) other expenses relating to Leslie's estate. The grandsons agree that the trust should pay FJ & P's fees (in the amount of $37,287.73) for the period before this Court's 2003 decision, but they object to all other fees and expenses.

### a) FJ & P's Attorneys' Fees

■ The trial court determined that all of FJ & P's fees, including those incurred after this Court's 2003 decision, were "reasonable and necessary expenses incurred in relation to [PNC's] administration of the Florence Trust." The grandsons contend that the post-decision litigation was unnecessary, and, therefore, should not have been paid from trust funds. The grandsons' frustration is understandable. After prevailing on appeal to this Court, they did not expect to face more than a year of additional litigation over the meaning of this Court's decision and then the fee applications. PNC incurred $43,036.63 in fees and expenses *after* this Court's decision.[6] In other words, PNC spent more money litigating the meaning of this Court's decision and its fee application that it did on the merits of the original controversy. While we find it hard to justify this imbalance, we are unable to say that the

---

**2.** Florence Chavin Trust Agreement, Item IV(s); 12 *Del. C.* § 2305; Ch. Ct. R. 192.

**3.** *McNeil v. McNeil,* 798 A.2d 503, 515 (Del. 2002).

**4.** *Id.* at 514.

**5.** *Bennett v. Andree,* 252 A.2d 100 (Del.1969).

**6.** PNC says that $7,071 of the $43,036.63 was for fees incurred between November 1, 2002 and February 24, 2003. Since no record citation was provided and the Court was unable to find support for that statement, we are not considering it. Even if that statement were properly authenticated, the imbalance remains. Under PNC's analysis, it spent almost as much on post-decision attorneys' fees as it did on the underlying merits.

trial court's decision authorizing the payment of those fees was arbitrary, capricious or clearly wrong.

### b) Attorneys' Fees Relating to Leslie's Estate

■ PNC retained C & T as Delaware counsel for Leslie's estate and Zacharias to administer Leslie's estate in Brazil. C & T charged a total of $60,177.69 for its services and Zacharias charged $30,000. PNC incurred those expenses under the belief that Leslie's estate was the beneficiary of the trust. If that assumption had been correct, there would have been less need to differentiate between Florence's trust expenses and Leslie's estate expenses, as the trust and estate assets eventually would have been combined.

As it turned out, Leslie's estate was not the beneficiary of the trust and the assets of the trust should not have been transferred to Leslie's estate. Moreover, PNC was on notice of the grandsons' claim before PNC authorized distribution to Miller of the $152,890 in net proceeds from the sale of Leslie's Delaware property. Thus, PNC distributed the assets of Leslie's estate without retaining funds to pay its administrative expenses. In its petition to the trial court, PNC explained:

> At the time the proceeds [from the sale of the Delaware property] were released, it was not believed that the estate would be required to use the proceeds from the sale of the real estate to pay debts because PNC anticipated that the distribution from the Florence Chavin Trust would remain intact. Thus, there are no funds available other than the aforementioned reserve [of trust funds] to pay PNC's counsel fees incurred in the administration of the Leslie Chavin estate.

We do not question PNC's good faith, but the fact remains that the trustee made a mistake. The trial court decided that the grandsons should pay for PNC's mistake, reasoning:

> Whether the ultimate beneficiary was Harlan Miller, as Leslie's sole heir, or the Chavins, as takers by default under the Florence Trust, PNC understood the necessity of taking steps to protect the Florence Trust assets from claims arising out of Leslie's death in Brazil. Because PNC believed that, properly construed, the Florence Trust would pass to Leslie, PNC acted on the assumption that the Leslie Estate was entitled to receive the trust assets, and it is for that reason that the expenses were actually paid out of or incurred on behalf of the Leslie Estate. Nevertheless, had PNC somehow foreseen the unexpected outcome in the Supreme Court and treated the Chavins as the presumptive beneficiaries, it is reasonable to infer that the same dispute would have arisen, with either Leslie's Brazilian executor or Harlan Miller acting the part of plaintiff, and the same or similar fees would have been paid out of the Florence Trust in defending its assets. Moreover, the administration of the Leslie Estate was necessary to the orderly administration of the Florence Estate since Leslie was named as a beneficiary of his mother's estate.

We are unable to accept either of these explanations. First, there is no record support for the trial court's conclusion that the same expenses would have been incurred if PNC had correctly identified the grandsons as the residuary beneficiaries. While it is true that Miller or Leslie's Brazilian estate might have contested that decision, the litigation would have been conducted here and would not have required international or Brazilian law experts. Second, the administration of Leslie's estate was not necessary to the order-

ly administration of Florence's estate. The fact that Leslie was a beneficiary of his mother's estate meant that PNC had to transfer some personal property from Florence's estate to Leslie's. Once that transfer was made, the "orderly administration" of Florence's estate was concluded. Thereafter, all expenses incurred in the administration of Leslie's estate were just that—expenses of Leslie's estate. In sum, we find that the trial court's decision on this issue was clearly erroneous, and must be reversed.

c) Other Expenses of Leslie's Estate

In addition to attorneys' fees, PNC paid a total of $12,380 to Zacharias for expenses, the Brazilian executor's commission, and the settlement of a claim against Leslie's estate. For the reasons discussed above, those expenses should be borne by Leslie's estate, not Florence's trust.

Finally, we consider PNC's cross-appeal. PNC objects to the fact that the trial court released the escrowed trust funds to the grandsons by Order dated November 21, 2003. PNC opposed the release of funds because it wanted to make sure enough trust funds were reserved for the payment of its attorneys' fees and expenses. PNC complains that it was not given an opportunity to be heard on the grandsons' application to release the funds. PNC asks this Court to reverse the order releasing funds and remand this matter for the trial court to conduct a hearing to determine whether some of the trust funds should be returned to the Register in Chancery "pending final resolution of this case." PNC also advises that, if successful in this appeal, it intends to seek additional attorneys' fees after the case is returned to the trial court.

In light of our decision on the fee awards, we hold that PNC's cross-appeal is moot. It does, however, highlight the unusual request made by counsel for the

grandsons at oral argument. Counsel asked this Court to put an end to this litigation by entering order that will control the final disposition of funds and leave no opportunity for additional motions, hearings, etc. We agree with the sentiment, and, accordingly, this 28th day of April 2005, it is hereby ORDERED:

1) that the decision of the Court of Chancery is affirmed in part and reversed in part, as detailed in this opinion;

2) that the Court of Chancery shall enter judgment in favor of Kenneth D. Chavin and Jeffrey M. Chavin and against PNC in the amount of $102,557.69 together with interest at the legal rate from the date of this decision to the date of payment;

3) that PNC shall not be entitled to any additional awards of attorneys' fees or expenses in connection with the appeal to this Court or any further proceedings in the Court of Chancery.