# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARIE ANN HURD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 4675-MG |
| | ) | |
| LEONARD HURD, JR., | ) | |
| Individually and as Trustee of the Marie | ) | |
| Ann Hurd Trust, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: October 18, 2019
Date Decided: January 31, 2020

John V. Work, of JOHN WORK LAW, Wilmington, Delaware, *Attorney for Plaintiff.*

Jackson Shrum, of JACK SHRUM, PA, Wilmington, Delaware, *Attorney for Defendant.*

Harold W.T. Purnell, II, of SERGOVIC CARMEAN WEIDMAN MCCARTNEY & OWENS P.A., Georgetown, Delaware, *Attorney for Intervenor.*

David J. Ferry, Jr. and Brian J. Ferry, of FERRY JOSEPH, P.A., Wilmington, Delaware, *Attorneys for Receiver.*

GLASSCOCK, Vice Chancellor

This unfortunate matter explores the responsibility of this Court where a settlor's express intent runs up against circumstances that it is obvious that settlor never foresaw at the time of the creation of the trust, and which render various provisions of his express intent contradictory. Currently before me is the Master's denial of a motion to discharge a Court-appointed receiver for the Marie Ann Hurd Trust (the "Trust"), in favor of the appointment of Leonard Paul Hurd as successor trustee of the Trust. After a de novo review, I adopt the conclusions of the Master.

Here, the settlor, Leonard Hurd (the "Settlor"), set up the Trust for the benefit of his wife, the Plaintiff, Marie Ann Hurd. He provided that after his death, his son, Leonard Hurd, Jr. ("Junior") would serve as trustee. Junior was Marie Ann's stepson.[1] The Revocable Trust Agreement (the "Trust Instrument") provided that, should Junior become unable to serve, the successor trustee should come from among his children, including his son, Leonard Paul Hurd ("Leonard"), Marie Ann's step-grandchild.

In other words, the Settlor provided that his bounty should flow to his widow, and that the duty to consummate that intent should be borne by his son, and then (should the son be unable to serve) by his grandson. His primary intent was to provide for his widow; his procedural intent was that enforcement of that

---

[1] Because of the abundance of parties surnamed Hurd, I use first names or relational names to refer to these individuals. No disrespect is intended thereby. I refer to Leonard Hurd, Sr. as the "Settlor" throughout.

beneficence would be the duty of the son and grandson. The unforeseen circumstances were that Junior would prove a faithless fiduciary, that he would manifestly fail to provide for the interests of Marie Ann under the terms of the Trust, and that he would loot the Trust in a way that would divert funds for his own benefit, and the potential benefit of his son, Leonard.

In prior decisions of this Court, the Master found Junior to be in flagrant breach of his fiduciary duties. She suspended him as trustee, appointed a receiver, and ordered him to disgorge the looted funds. Junior took exception, and on de novo review I agreed with the conclusions of the Master and directed that Junior be removed as fiduciary for the Trust. On appeal, our Supreme Court affirmed the disgorgement order. In the meantime, the receiver initiated legal action to pursue funds removed from the Trust (some of which had been placed in other trust accounts in Maryland) and received a judgment against Junior. In other words, the Settlor's primary intent—to care for Marie Ann—had become incompatible with his secondary intent—that Junior be the fiduciary. The fact that Junior would prove faithless to his father's primary intent, obviously, was not foreseen by the Settlor. This Court preserved the primary intent by vitiating the procedural intent, and removing Junior as trustee.

Junior has now purported to withdraw from the trustee position, from which he had already been discharged by this Court, in favor of Leonard. Leonard's service

as successor trustee is consistent with the Settlor's intent as expressed in the Trust Instrument. The question is whether such service by Leonard is also in fatal conflict with the Settlor's primary expressed intent, care for Marie Ann. I find that, under the present circumstances, it is. Leonard would be conflicted in service as a fiduciary to an extent incompatible with his appointment. As Leonard correctly points out, many family members serving as trustees have conflicts between providing for a life beneficiary and preserving the corpus for the remaindermen, which may include the trustee herself or her children. That is a circumstance, however, that a settlor himself may foresee and address as he finds appropriate.

The matter before me, I find, is fundamentally different. Here, the Settlor could not foresee that Junior would disrespect his charge as a fiduciary. He could not foresee Junior's looting the Trust, and a receiver being appointed as fiduciary for Marie Ann. He could not foresee diversion of Trust funds to Junior, some thereafter placed in other trusts for Junior's own benefit. And he could not foresee that among Leonard's duties if appointed successor trustee would be overseeing the Trust's now-major asset, the judgment against his father, which would conflict with both Leonard's filial and potential financial interests. The Master found this conflict sufficient to deny Leonard's motion: I agree. I note that Leonard's counsel, at the hearing on exceptions to the Master's Order, pointed out with admirable candor that if appointed trustee, Leonard would have the authority on behalf of the Trust to

3

compromise the judgment against his father, and settle the matter for payment of some fraction of the amount owed.

I find, in this situation, that the Settlor's primary intent, protection of the Trust's corpus and application of its funds for the benefit of Marie Ann, is best advanced by the denial of Leonard's motion to discharge the receiver and recognize Leonard as the current trustee. My rationale, in more detail, is set out below.

## I. BACKGROUND

A detailed background of this hoary case is set forth in the Master's Reports, cited to below. I include a recitation of the facts and procedural history sufficient to consideration of the Exceptions to the Master's Order at issue here.

Plaintiff Marie Ann Hurd is the beneficiary of the Trust, which was set up to provide her with resources during her lifetime after her husband's death in 2000.[2] Defendant Junior, the Plaintiff's stepson, served as trustee of the Trust.[3] Marie Ann originally sued Junior in 2009, after he refused to expend trust funds for her benefit, and in a 2016 Master's Report (the "2016 Report"), the Master found that he had breached his fiduciary duty to the Trust and suspended him as trustee.[4] Junior took exceptions to the 2016 Report.[5] On February 10, 2017, I appointed Cover & Rossiter

---

[2] Master's Final Report dated March 26, 2018, Docket Item ("D.I.") 122, at 2.

[3] *Id.* at 2–3.

[4] *Id.* at 3–4; Masters Final Report dated September 20, 2016, D.I. 74.

[5] Def.'s Notice of Exceptions to Master's Final Report, D.I. 75.

(the "Receiver") as receiver for the Trust (the "Receivership Order").[6] That Order specified that Junior was suspended as trustee, and I ordered that "[t]he suspension will continue until otherwise ordered by this Court."[7] In that Order, I also directed that "[t]he Receiver's appointment will continue until relieved by this Court. . ."[8] I directed the Receiver to conduct an audit of the Trust and provide an accounting.[9]

Five days later, on February 15, 2017, I held an evidentiary hearing on the Defendant's Exceptions to the 2016 Report. At that hearing, I denied Junior's exceptions and directed that he be removed as trustee.[10] The Receiver filed its account of the Trust on October 27, 2017, and on March 26, 2018, this Court issued another Master's Final Report (the "2018 Report") recommending approval of the Receiver's findings.[11] In the 2018 Report, the Master ordered Junior to disgorge funds and property improperly diverted from the Trust, including $611,971.44 in income, $450,559.64 in principal, 6,075 shares of Nucor stock, as well as any additional deficiencies that accrued thereafter.[12] Junior took exceptions to the 2018

---

[6] Stipulated Order for the Appointment of Receiver, D.I. 90 ("Receivership Order").

[7] *Id.* ¶ 1.

[8] *Id.* ¶ 2.

[9] *Id.* ¶ 6.

[10] Evid. Hr'g Tr., D.I. 94, at 48:1–51:21 ("So it's clear to me that the trustee has acted in bad faith. It's clear to me that he should no longer serve as trustee and should be removed.").

[11] Master's Final Report dated March 26, 2018, Docket Item ("D.I.") 122, at 20–21.

[12] *Id.* at 20.

Report, and I affirmed the Report on August 2, 2018.[13] Junior appealed my decision to the Supreme Court.[14]

While the appeals process was underway, another aspect of this litigation developed: the attempt by Junior's son, Leonard, to dissolve the receivership. On September 7, 2018, Junior purported to resign as trustee in favor of his son, Leonard.[15] Under the terms of the Trust Instrument, in the event that Junior is unable to serve as trustee, one of the Settlor's grandsons should become the trustee in his place.[16] Leonard filed a Petition for Appointment as Successor Trustee in a separate action in this Court.[17] He then filed a Motion for Voluntary Dismissal of that related action, at the same time filing a Motion to Intervene in this action.[18] In his Motion

---

[13] Notice of Exception to Master's Final Report, D.I. 123; Oral Argument Tr. on Def.'s Exceptions to the Master's Final Report and Rulings of the Court, D.I. 159.

[14] Am. Notice of Appeal, D.I. 149.

[15] *See* Mot. to Dissolve Receivership, D.I. 182, ¶¶ 8–9 ("On September 7, 2018, [Junior] resigned as trustee of the Marie Ann Hurd Trust in favor of [Leonard] . . . [Leonard] accepted successor trusteeship on September 7, 2018.").

[16] Intervenor's Reply Br. in Support of Exceptions to the Master's Order, D.I. 198 ("Intervenor's Reply Br."), Ex. A, Revocable Trust Agreement ("Trust Instrument"), § 5.1(c) ("If for any reason and at any time there is an unfilled vacancy and [Junior] is unable or unwilling so to act, [Leonard] and Bryan Eric Hurd, or either of them who is able and willing to act, are appointed as co-trustees, or sole trustee, as the case may be, of that trust.").

[17] *Hurd v. Marie Ann Hurd Trust*, C.A. No. 2018-0195-PWG, Pet. For the Appointment of a Successor Trustee of the Marie Ann Hurd Trust, D.I. 1.

[18] *Hurd v. Marie Ann Hurd Trust*, C.A. No. 2018-0195-PWG, Pet'r's Mot. for Vol. Dismissal, D.I. 17; Leonard Paul Hurd's Mot. to Intervene, D.I. 156.

to Intervene, Leonard stated he "is the successor sole serving trustee of the Marie Ann Hurd Trust."[19]

The Master granted Leonard's motions to dismiss the separate action and to intervene on November 30, 2018.[20] In ruling on the Motion for Voluntary Dismissal, the Master held that "[c]ontrary to [Leonard's] claim, I find [Leonard] is not currently serving as successor trustee of the Trust."[21] Likewise, in granting the Motion to Intervene, the Court held that "any action taken to appoint [Leonard] as successor trustee of the Trust through the trust agreement is ineffectual and [Leonard] is not currently serving as successor trustee of the Trust."[22] Leonard chose not to take exceptions to either of these rulings by the Master. Instead, once the Court granted his Motion to Intervene, Leonard moved to dissolve the receivership, arguing that he was currently the successor trustee.[23] The Master denied the motion, finding that the Receiver remained a critical part of the ongoing appellate process.[24] In denying the motion, the Master once again held that Leonard "is not currently

---

[19] Leonard Paul Hurd's Mot. to Intervene, D.I. 156, at 1.

[20] *Hurd v. Marie Ann Hurd Trust*, C.A. No. 2018-0195-PWG, Order dated Nov. 30, 2018, D.I. 20 ("Dismissal Order"); Order on the Mot. to Intervene dated Nov. 30, 2018, D.I. 162 ("Intervention Order").

[21] Dismissal Order, at 4.

[22] Intervention Order, at 3.

[23] *See* Mot. to Dissolve Receivership, D.I. 163, ¶ 9 ("As a result of the resignation of [Junior], and acceptance of trusteeship by [Leonard] the need for a receivership for this trust has been eliminated.").

[24] Order dated Feb 14, 2019, D.I. 172, at 3–4.

serving as successor trustee of the Trust."[25] The Master noted, "[t]he Court has stated this repeatedly."[26] Leonard took no exceptions to this Order.

After the Supreme Court affirmed my denial of the Defendant's Exceptions to the Master's 2018 Final Report, Leonard filed a new Motion to Dissolve the Receivership.[27] Once again, Leonard stated that he was in fact the then-current successor trustee under the terms of the Trust Instrument.[28] On June 26, 2019, the Master issued an order (the "2019 Order") denying Leonard's second motion to dissolve, holding that the receivership's purpose had not been fulfilled due to a pending sale of Trust property and related litigation that had arisen in Maryland (the "Maryland Action").[29] In that Maryland Action—which is ongoing—the Receiver is attempting, as an interpleader plaintiff, to recover $833,980.05 of funds moved

---

[25] *Id.* at 4.

[26] *Id.* at 4 n.11.

[27] Mot. to Dissolve Receivership, D.I. 182.

[28] *Id.* ¶ 10 ("As a result of the resignation of [Junior], and acceptance of trusteeship by [Leonard] the need for a receivership for this trust has been eliminated.").

[29] Order dated June 26, 2019, D.I. 190, at 4 ("2019 Order").

out of the Trust into trusts controlled by Junior.[30]  One of these trusts contemplates Leonard as a remainderman and contingent beneficiary.[31]

In the order denying Leonard's Motion to Dissolve, the Master held—again—that Leonard "is not currently serving as successor trustee of the Trust."[32]  The Master noted that "[t]he Court has stated repeatedly that, because of his prior removal, [Junior] did not resign from the position of trustee on September 7, 2018."[33]  Leonard took Exceptions to the Master's 2019 Order.[34]  In his exceptions, among other things, Leonard states that "[o]n September 7, 2018, [Junior] resigned as trustee of the Marie Ann Hurd Trust in favor of [Leonard].  [Leonard], Intervenor,

---

[30] Pl.'s Resp. to Mot. to Dissolve Receivership, D.I. 186, Ex. A, Compl. for Interpleader, at 4 (requesting remittance of $833,980.05 for purposes of interpleader action); Resp. of Receiver Cover & Rossiter, P.A. to Intervenor's Mot. to Dissolve Receivership, D.I. 187, Ex. A, Order in the Circ. Ct. for Worcester Cty. MD, C-23-CV-18-000347 (ordering remittance of $835,573.88 to the clerk of court from Calvin B. Taylor Banking Company, Inc. for the purposes of interpleader action).

[31] The Leonard Hurd Exempt Lifetime Trust is a defendant in the Maryland Action.  Intervenor's Reply Br., Ex. C, Compl. of Interpleader Pl. (Unredacted), at 2 (naming "Leonard Hurd Exempt Lifetime Trust" and "Leonard Hurd, Trustee" as interpleader defendants).  Section 4.2 of the Trust Instrument, which establishes the Leonard Hurd Exempt Lifetime Trust, provides that "[t]he property, if any, passing to the trustees to be held in an 'Exempt Lifetime Trust' . . . for the benefit of a descendant of settlor . . . shall be administered for the benefit of that descendant . . . and his descendants."  Trust Instrument § 4.2.  In addition to providing directly for the beneficiary of the Exempt Lifetime Trust, "the trustees may pay to or apply for the benefit of each member of the beneficiary's family any amounts out of the net income . . . and principal . . . of the trust as, in the sole reasonable discretion of the trustees, are necessary or advisable for the health, education, support or maintenance of that family member."  Trust Instrument § 4.2(A).  Junior is the trustee of the Exempt Lifetime Trust.  Thus Leonard, as Settlor's descendant and Junior's family member, is a potential beneficiary of the Exempt Lifetime Trust.

[32] 2019 Order, at 4.

[33] *Id.* at 4 n.8.

[34] Intervenor's Exceptions to the Master's Order, D.I. 191.

accepted successor trusteeship on September 7, 2018."[35] Thus, Leonard asks me to "terminate the receivership and recognize Intervenor, [Leonard], as successor trustee so that he can discharge the duties of a trustee."[36]

I heard oral argument on September 20, 2019. I gave a partial ruling from the bench, finding that under the law of the case doctrine, based on the Master's Final Reports and Orders to which no exceptions were taken, that Leonard was not then serving as the successor trustee.[37] I asked for supplemental briefing from the parties on the remaining issues. Leonard moved for reargument on my partial bench ruling. The parties filed supplemental briefing on October 18, 2019, and I considered both the exceptions and the Motion for Reargument fully submitted at that time. My decision on Leonard's Exceptions to the Master's Order as well as the Motion for Reargument follow.

## II. ANALYSIS

"[T]he standard of review for a master's findings—both factual and legal—is *de novo*."[38] However, where "the parties do not except to any of the master's factual findings, they are deemed to have consented, and the trial judge may review the

---

[35] *Id.* ¶¶ 9–10.

[36] *Id.* ¶ 26.

[37] Tr. of 9.20.19 Remarks of the Court Regarding Def.'s Exception to the Final Report of the Master, D.I. 206 ("Exceptions Hr'g Tr.").

[38] *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

10

record de novo accepting the master's facts in the same way that the judge would resolve a dispute presented on a stipulated set of facts."[39]   Addressing Leonard's exceptions and his Motion for Reargument requires resolving three issues.  First, is Leonard currently serving as the successor trustee?  Second, has the Receiver fulfilled its duties such that the receivership should now be dissolved?  Third, does the well-established principle of trust law that a settlor's intent controls interpretation and enforcement overcome the unforeseen—and unforeseeable— conflict of interest in the presumptive trustee here?  My answer to all three questions is no.

### A. *Leonard's Motion for Reargument is Denied*

At oral argument on the exceptions, I delivered a partial ruling from the bench that under the law of the case doctrine, based on my February 15, 2017 ruling from the bench and the Master's prior rulings in this case from which no exceptions were taken, Leonard is not an appointed, suspended trustee, as he argued, but rather a presumptive trustee under the terms of the Trust Instrument.[40]  "The law of the case

---

[39] *Id.*

[40] Exceptions Hr'g Tr., 3:20–4:13 ("There have been repeated rulings, at least one of which was not taken exception to, that Mr. Leonard Paul Hurd's status is that of a presumptive trustee under the terms of the trust agreement but not an actual appointed, serving trustee whose duties are suspended.  I don't think I have any discretion at this point to say otherwise because that ruling was made by the Master.  No exceptions were taken.  Under our rules, that is a consent to the Master's decision becoming an order of the Court.  It is an order of the Court, and it is the law of the case in this case . . . as a matter of law, [Leonard] is not a trustee, whose duties are suspended, but is, in fact, nothing more than a putative or presumptive trustee under the [Trust Instrument].").

is established when a specific legal principle is applied to an issue presented by facts which remain constant throughout the subsequent course of the same litigation."[41] Relatedly, "[i]f a notice of exception to a final report is not timely filed, then the parties shall be deemed to have stipulated to the approval and entry of the report as an order of this Court."[42]  Taking these two principles into account, I determined that the repeated and unchallenged holding of the Master regarding Leonard's status implicated the law of the case doctrine and established that ruling essentially as stipulated by the parties.

Importantly for my bench ruling—and this ruling on the Motion for Reargument—I find that as both a factual and legal matter, Junior was removed as trustee after February 15, 2017.  Leonard argues that Junior was suspended, and this suspension remained intact until his resignation in favor of his son.  I need not reach the dubious proposition that a suspended trust fiduciary may effectively take an action "in favor of a successor" that is binding on the trust.  That is because Junior was *not* the trustee on September 7, 2018, when he purported to resign. In the Receivership Order issued on February 10, 2017, I ordered that Junior "is suspended

---

[41] *Hoskins v. State*, 102 A.3d 724, 729 (Del. 2014) (internal quotations omitted) (citing *Kenton v. Kenton*, 571 A.2d 778, 784 (Del. 1990)).

[42] Ch. Ct. R. 144(c).  Rule 143 notes that "orders" are treated as "final reports."  Ch. Ct. R. 143 ("When a Master appointed pursuant to this Rule issues a directive of this Court denominated as an 'Order,' that directive shall be deemed a final Master's Report under Rule 144 of the Rules of this Court.").

12

[and the] suspension will continue until otherwise ordered."[43]   However, in my bench ruling of February 15, 2017, I held that "[i]t's clear to me that [Junior] should no longer serve as trustee and should be removed."[44]   Leonard, in briefing, argues that "[t]he Court, in dicta, stated removal of [Junior] was appropriate; however, the Court did not actually remove [Junior] as trustee."[45]   This argument is unfounded. In her ruling on the Motion to Intervene on November 30, 2018, the Master interpreted my bench ruling as a removal: "The Court affirmed the Master's Final Report in a bench ruling on February 15, 2017 and, in that ruling, [Junior] *was removed* as trustee."[46]   I agree with the Master's holding that my February 15 bench ruling removed Junior as trustee.   In any event, neither Junior nor Leonard took exceptions to the Master's Order finding that Junior was removed as trustee.   In my bench ruling currently under consideration, I found, accordingly, that Junior was no longer trustee by the time of his "resignation."

As noted, Leonard has moved for reargument of that partial bench ruling. Chancery Court Rule 59(f) provides that "[a] motion for reargument setting forth briefly and distinctly the grounds therefor may be served and filed within 5 days

---

[43] Receivership Order, ¶ 1.

[44] Tr. of 2.15.17 Evid. Hr'g on Def.'s Exceptions to the Master's Report and Rulings of the Court, D.I. 94, 48:1–51:21.

[45] Intervenor's Reply Br., at 9.

[46] Intervention Order, at 1 n.2 (emphasis added).

after the filing of the Court's opinion or the receipt of the Court's decision."[47]  This Court has previously found that such a motion "will be denied unless the court has overlooked a controlling decision or principle of law that would have controlling effect, or the court has misapprehended the law or facts so that the outcome of the decision will be different."[48]  The motion will be denied if it is "merely a rehash of arguments already made."[49]

In his motion, Leonard cites *Gannett Co., Inc. v. Kanaga*[50] for the proposition that the law of the case doctrine "is not an *absolute* bar to reconsideration of a prior decision that is clearly wrong, produces an injustice or should be revisited because of changed circumstances."[51]  True.  Leonard notes that the Master's Orders of November 30, 2018 and February 14, 2019, which I found established the law of the case here, were issued without evidentiary hearings or oral argument.  Leonard also repeats arguments regarding basic principles of trust law and the trustor's intent.

I do not find that Leonard has identified a clear error, injustice, or changed circumstance that would warrant overturning the law of the case.  I found in 2017 that Junior had acted faithlessly and should be removed as trustee; the Master

---

[47] Ch. Ct. R. 59(f).

[48] *Certain Underwriters at Lloyd's v. Nat'l Installment Ins. Servs.*, 2008 WL 2133417, at *1 (Del. Ch. May 21, 2008).

[49] *Id.*

[50] 750 A.2d 1174 (Del. 2000).

[51] *Id.* at 1181 (emphasis in original).

14

recognized that removal through multiple orders to which neither Leonard nor Junior took exception. The Motion for Reargument approaches frivolity, and is denied.

It is worth pointing out, I think, that there is little consequence to this determination; even if Leonard and Junior had been able to take action making Leonard a serving successor trustee, rather than a potential successor trustee, the position of trustee is currently without authority.[52] The fiduciary responsibility for and fiduciary control of the Trust reside in the Receiver, until removed by this Court. If I found that Leonard were the current trustee, I would—for reasons set out below in considering the motion to discharge the Receiver—find it appropriate to exercise the equitable power of this Court to suspend Leonard's power to act as fiduciary, and continue the receivership.

### B. Leonard's Exceptions to the Master's Order are Denied and the Master's Order is Affirmed

Leonard raises three issues in his Exceptions to the Master's Order. The first issue—whether Leonard is the current trustee or merely a presumptive successor trustee—I have ruled on from the bench and further addressed in consideration of Leonard's Motion for Reargument, above. Leonard raises a related argument—that a receivership "will usually be terminated by the court when a new trustee is

---

[52] Leonard acknowledges as much in contending that he is the current serving trustee: "At the present time [Leonard] is the current successor trustee; however, he is not vested with trustee powers due to the Receivership." Intervenor's Reply Br., at 9.

appointed."[53]   To the extent this states an exception to the Master's Order, it is subsumed by my finding that Leonard is not a current trustee.

In his second exception, Leonard points out that receiverships in the context of trusts are generally to be of short duration to maintain the status quo and prevent additional harm.  Leonard contends that this goal of the receivership has been accomplished, as has the Receiver's accounting; in his view the Receiver is no longer necessary.

In the Receivership Order, I ordered that "[t]he Receiver's appointment will continue until relieved by this Court or another court of competent jurisdiction."[54]  I find the Receiver continues to be required, not only to maintain the status quo but to prevent additional harm to the Trust and its beneficiary, Marie Ann Hurd.  The Receiver is currently acting as interpleader plaintiff in the related Maryland Action to recover over $830,000 belonging to the Trust, funds that are allegedly being improperly shielded by Junior.  Further, the Receiver is also actively engaged in recovering the remainder of the judgment against Junior, a recovery that, for reasons described below having to do with conflicts of interest, requires the involvement of the Receiver rather than Leonard.[55]   Therefore, I find the Receiver's duties to

---

[53] Intervenor's Exceptions to the Master's Order, D.I. 191, at 3 (citing Austin W. Scott, Jr. and William F. Fratcher, *The Law of Trusts* § 199.4 (4th ed. 1988)).

[54] Receivership Order, ¶ 2.

[55] Leonard argues that the Receiver's action in Maryland is improper because the Maryland court lacks jurisdiction over Delaware trusts. Presumably, this argument is meant to suggest that a

16

maintain the status quo and prevent additional harm are ongoing and, as originally

ordered, "will continue until relieved by this Court. . ."[56]

Finally, Leonard argues that the Master erred by not appointing him as

successor trustee. Delaware's policy for trusts is "to give maximum effect of the

principle of freedom of disposition and to the enforceability of governing

instruments."[57] Regarding this point, our Supreme Court has held:

> The cardinal rule of law in a trust case is that the intent of the settlor
> controls the interpretation of the instrument. Such intent must be
> determined by considering the language of the trust instrument, read as
> an entirety, in light of the circumstances surrounding its creation. All
> other rules of construction must be subordinate to determining the
> settlor's intent, their value being as aids in ascertaining that intent as
> precisely as possible.[58]

Here, the Trust Instrument provides that if Junior becomes unable to serve as trustee,

one of Junior's sons—the Settlor's grandsons—will serve.[59] Leonard is Junior's son

and the Settlor's grandson. Junior, having been removed for malfeasance, is unable

---

successor trustee is necessary to halt this improper litigation. It appears, however, that the issue in the Maryland Action is the right to money held in a Maryland bank, which would provide the Maryland courts with *in rem* jurisdiction. In any event, an intent on Leonard's part to interfere with collection attempts—if such this represents—highlights the very conflicts discussed below in this Memorandum Opinion.

[56] Receivership Order, ¶ 2.

[57] 12 *Del. C.* § 3303(a).

[58] *Chavin v. PNC Bank*, 816 A.2d 781, 783 (Del. 2003) (internal citations and alterations omitted).

[59] Trust Instrument, § 5.1(c).

to serve. Thus, as Leonard repeatedly points out, the Trust Instrument contemplates his appointment as successor trustee.

The question is whether the Settlor's expressed intent for successor trustees, as embodied in the Trust Instrument, still controls when unforeseen—and unforeseeable—conflicts of interest arise in those presumptive trustees. The principal intent stated in the Trust Instrument is clear; to provide for Marie Ann during her lifetime.[60] The secondary intent was that Junior should carry out the primary intent, as trustee. The primary intent was frustrated by Junior's faithlessness; and vindication of that intent caused this Court to disregard the secondary intent and remove the faithless Junior as trustee. The Settlor's tertiary intent was that one of his grandsons become trustee, should Junior be unable to serve. This intent, according to Leonard, is being frustrated by the Court's failure to discharge the Receiver and appoint Leonard successor trustee. Assuming this is so, what should the Court do in way of carrying out the Settlor's intent? Leonard strenuously argues that failing to respect the literal terms of the Trust Instrument would effectively enable the beneficiary to "rewrite the trust instrument after the

---

[60] Trust Instrument, § 4.1 ("The property, if any, passing to the trustees to be held in the Marie Ann Hurd trust shall be administered for the benefit of Marie Ann Hurd. . .").

settlor's death," thus undermining long-established Delaware public policy regarding trusts.[61] I disagree.

For several reasons, I find that the Master's Order properly followed the principles of trust law outlined above. As Marie Ann—Respondent here—notes, the Settlor's primary intent in setting up the Trust was to provide for her, after his death.[62] The principal remaining assets of the Trust are the judgment against Junior and the *in rem* action to recover from the other trusts in the Maryland Action. A slavish devotion to the Settlor's tertiary intent would put a hopelessly conflicted fiduciary—Leonard—in a position where his duty will require executing on a large judgment against his own father, and action against his own interest, to promote the interest of his stepmother. Such devotion to form would be inimical to the primary function of the Settlor's intent, and would run afoul of, not honor, that intent. For this reason, I find Leonard's narrow appeal to the Trust Instrument while ignoring the overall purpose of the Trust to be unpersuasive.

Dissolving the receivership and appointing Leonard as successor trustee would lead to two conflicts of interest, both unforeseeable at the time of the Trust's creation. The first is a pecuniary and legal conflict of interest. Leonard is a potential

---

[61] Intervenor's Reply Br., at 8 (citing *In re Trust Under Will of Flint for the Benefit of Shadek*, 118 A.3d 182, 194 (Del. Ch. 2015).

[62] Trust Instrument, § 4.1 ("The property, if any, passing to the trustees to be held in the Marie Ann Hurd trust shall be administered for the benefit of Marie Ann Hurd. . .").

beneficiary of one of the trusts that held money at issue in the Maryland Action.[63] If Leonard becomes successor trustee of the Trust, he will be acting in the Maryland Action as both the plaintiff Trust's controller and the defendant Trust's potential beneficiary. This would create improper incentives for him to terminate or settle the litigation in a way that favors his interests as a potential beneficiary in the defendant trust over his duties as a fiduciary to this Trust.[64] The second conflict of interest is personal. If appointed as a successor trustee, Leonard's central task would be to enforce a judgment against his own father that now totals more than $1 million. It is not an aspersion on Leonard's character to say that this conflict between fiduciary and filial duty could cloud his judgment in a way never contemplated by the Settlor.

In fact, Leonard has already signaled that these conflicts are not merely theoretical. In his reply brief, he wrote that "former trustee, [Junior], could and likely should make a settlement offer to the [Trust] regarding satisfaction against him. In the event that [Junior] makes a reasonable offer to the trust, [Leonard] could accept it for the benefit of the trust and its beneficiaries under a Business Judgment Standard. . ."[65]

---

[63] See note 31, *supra*.

[64] *See* Intervenor's Reply Br., at 16 ("In the event that [Junior] makes a reasonable settlement offer to the trust, [Leonard], could accept it for the benefit of the trust and its beneficiaries. . .").

[65] *Id.*

20

As our Supreme Court has held, "[t]he designation of replacement trustees is a matter for the settlor's determination in the first instance and, where that intention is express, should not be disregarded in the absence of compelling circumstances such as the unsuitability of a designated replacement."[66]  In fact, "when a court seeks to exercise its residual authority of appointment, it should do so only in rare circumstances, since the identity and number of the trustees is central to the structure of the trust and a key indicator of intent of the settlor."[67]  While the Settlor's intent here is expressly memorialized in § 5.1(c) of the Trust Instrument, I find the circumstances here both "compelling" and "rare."  I find it unlikely, given the Settlor's overarching intent for the Trust to provide for his wife after his death, that—had he foreseen that his son would breach his fiduciary duties and plunder the Trust—he would nonetheless choose that fiduciary's son as the party to vindicate the Trust's rights by enforcing a judgment against his own father.  In any event, such an appointment would be inimical to the Settlor's primary intent; the benefit of Marie Ann.

---

[66] *McNeil v. McNeil*, 798 A.2d 503, 514 (Del. 2002).  I also note that this Court has the statutory authority, even in the absence of a breach of trust, while "having due regard for the expressed intention of the trustor," to remove a trustee on its own initiative under certain enumerated circumstances, including "[u]nfitness, unwillingness or inability of the trustee to administer the trust properly."  12 *Del. C.* § 3327(3).

[67] *McNeil*, 798 A.2d at 513–14 (internal citations omitted).

Finally, I note that Leonard objected at the hearing on exceptions that the Master had taken a kind of Old-Testament approach to this litigation by impermissibly visiting the sins of the father on the son. This is manifestly untrue. Junior was a faithless fiduciary. He has suffered the consequences thereof, including removal as trustee. As a result, the Court imposed a receivership over the Trust. For the reasons explained above, that role continues to be necessary. Leonard has committed no acts of malfeasance, and I assume absent conflicts of interest, he could fulfill his designated role as successor trustee. However, those conflicts, unforeseen by his grandfather the Settlor, and created by his father and not Leonard himself, at present render him unable to replace the Receiver and vindicate the rights of the Trust. Once the Receiver's task is complete, and the conflicts resolved, nothing in the Master's Order or this decision precludes Leonard's service as trustee.[68]

Upon plenary review, I find the Master properly exercised the equitable powers of this Court by denying the Motion to Dissolve the Receivership and holding, once again, that Leonard is not the current trustee of the Trust.

---

[68] *See Rodriguez-Tocker v. Estate of Tocker*, 129 P.3d 586, 600–601 (Kan. App. 2006) (disqualifying successor trustee under similar circumstances during the pendency of conflicts of interest).

## III. CONCLUSION

For these reasons, Leonard's Exceptions to the Master's Order are denied, and the Master's Order of June 26, 2019 is affirmed. Leonard's Motion for Reargument is also denied. An appropriate Order is attached.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

MARIE ANN HURD,       )
      )
         Plaintiff,       )
      )
      v.       )  C.A. No. 4675-MG
      )
LEONARD HURD, JR.,       )
Individually and as Trustee of the Marie     )
Ann Hurd Trust,       )
      )
         Defendant.       )

## ORDER

AND NOW, this 31st day of January, 2020, for the reasons set forth contemporaneously in the attached Memorandum Opinion dated January 31, 2020, IT IS HEREBY ORDERED that the Intervenor's Exceptions to the Master's Order are DENIED, the Intervenor's Motion for Reargument is DENIED, and the Master's Order of June 26, 2019 is AFFIRMED.

IT IS SO ORDERED.

/s/ Sam Glasscock III

Vice Chancellor